Rapallo, J.
That the sum paid by the plaintiff to the defendants was illegally demanded, and that they had no just right to it, is not denied. But they claim to retain it on the ground that the payment was voluntary ; and they cite the elementary rule, “ that, by submitting to the demand, he that pays the money gives it to whom he pays it, and makes it his, and closes the transaction between them.”
The court, at the trial, sustained this claim of the defendants, and decided that, although the defendants were not *500 entitled to the commissions claimed, yet, the payment thereof, in the manner proved, was a voluntary payment, and, therefore, the money could not he recovered; and, solely upon that ground, directed a verdict for the defendant.
Without passing upon the questions argued by the appellant, whether an executor can make a valid gift to a co-executor, or his representative, of funds belonging to the estate; or whether the payment in controversy was for fees illegally exacted, we are of opinion that the facts of the case clearly require us to hold that the payment was not voluntary.
The defendants had in their possession $85,000 of bonds belonging to the estate of which the plaintiff was surviving executor. These bonds had come to the possession of the defendants through George H. Mumford, deceased, who was, in his life, the co-executor, with the plaintiff, of the will of Mrs. Scholey. The complaint alleges that the defendants refused to deliver these bonds to the plaintiff until the sum in controversy, which was alleged by the defendants to be due to the estate of George H. Mumford, deceased, for commissions, was paid to them, and that this claim was disputed by the plaintiff. The parties appeared before the surrogate, who, in the first instance, decided that the defendants were entitled to the commissions. The plaintiff then paid them, and afterward applied to the surrogate for a rehearing upon the question, and upon such rehearing the surrogate reversed his former decision. The complaint, alleges that the plaintiff, although advised that the first decision of the surrogate was erroneous, nevertheless paid the sum claimed, in order to obtain the delivery of the bonds- to him. The defendants, in their answer, do not deny the allegation of the complaint that they- refused to deliver up the bonds except upon payment of the commissions, but, on the contrary, expressly admit “ that they would not have delivered up the bonds except upon the terms aforesaid,” i. e,, the payment of the commissions. The plaintiff testified that he was anxious to get the bonds \ that the defendant had, after the death of George H. Mumford, declined to give up the *501 bonds, on the ground that commissions were due. The evidence is very meagre, but I think it sufficiently appeared, from the acts of the parties and the. admission in the answer, that this claim for commissions was disputed, and was yielded to simply as a means of obtaining possession of the bonds to which the plaintiff was entitled, and which the defendants withheld from him for the purpose of coercing payment of the commissions.
To constitute a voluntary payment the party paying must have had the freedom of exercising his will. When he acts under any species of compulsion the payment is not voluntary. If a party has in his .possession goods, or other property, belonging to another, and refuses to deliver such property to that other unless the latter pays him a sum of money which he has no right to receive, and, in order to obtain possession of his property. he pays that sum, the money so paid is a payment made by compulsion, and may be recovered back. (Per Bayley, J., Shaw v. Woodcock, 7 B. & C., 73.) This has been frequently decided. Where a pawnbroker refused to deliver plate pawned, except upon payment of excessive interest, and the owner paid it to obtain his property, he was allowed to recover back the excess. (Ashley v. Reynolds, 2 Stra., 915). An action will lie to recover back money paid to release goods wrongfully detained on a claim of lien (Ashmole v. Wainwright, 2 Ad. & El. [N. S.], 737; Harmony v. Bingham., 12 N. Y., 109, 116); or money wrongfully exacted by a corporation as a condition permitting a transfer of stock. (Bates v. N. Y. Ins. Co., 3 Johns. Cas., 238.) The cases to this effect are numerous. In all these cases the payment is regarded as compulsory, and not voluntary. I think the case at bar falls within the principle of these decisions. The amount of property was very large compared with the sum exacted ; and, from the conduct of the plaintiff, it may well be inferred that he preferred to pay it and take the chances of recovering it back, rather than to incur the hazard of having so large an amount of property in the hands of the defendants.
*502 The claim of the defendants, that after the surrogate had decided that the defendants were entitled to the commissions, the plaintiff gave up the controversy, and consented to abide by the decision, is not sustained by the facts. The uncontroverted allegations of the complaint, that the defendants refused to deliver the bonds unless the commissions were paid; and that, after the first decision of the surrogate, the plaintiff, although advised that the decision was erroneous, did, nevertheless, pay them, in order to have the bonds delivered up to him, coupled with the steps which were very soon afterward taken by the plaintiff to obtain a reversal of the decision of the surrogate; and the allegations in the answer, that, after the first decision, the defendants notified the plaintiff that they would deliver up the bonds on payment of the amount claimed by them, and that they would not have delivered tfp the bonds except upon the terms aforesaid, sufficiently define the positions of the parties, and show that the payment was not the free and voluntary act of the plaintiff; but that he had no choice, and was compelled to submit to the demand in order to obtain immediate possession of the bonds.
The judgment should be reversed, and a new trial ordered, with costs to abide the event.
All concur; except Miller, J., dissenting.
Judgment reversed.